UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x
DME CONSTRUCTION ASSOCIATES, INC.,

                       Plaintiff,                                **MEMORANDUM OF
DECISION AND ORDER**

  -against-                                              15-cv-4322 (ADS)(SIL)

UNITED STATES OF AMERICA, JACOB LEW, Secretary of the United States Treasury, Bureau of Fiscal Service,

                       Defendants.
----------------------------------------------------------------------x

**APPEARANCES:**

**Rabinowitz & Galina, Esqs.**
*Attorneys for the Plaintiff*
94 Willis Avenue
Mineola, NY 11501
       By:   Michael M. Rabinowitz, Esq., Of Counsel

**U.S. Attorney's Office, Eastern District of New York**
*Attorneys for the Defendants*
610 Federal Plaza
Central Islip, NY 11722
       By:   Robert B. Kambic, Assistant U.S. Attorney

**SPATT, District Judge:**

       On July 23, 2015, the Plaintiff DME Construction Associates, Inc. ("DME" or the "Plaintiff") commenced this action under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, against the United States of America (the "Government") and Jacob Lew, in his official capacity as the Secretary of the United States Treasury ("Secretary Lew", together with the Government, the "Defendants"), alleging that they wrongly withheld certain monies due to the Plaintiff under a Government construction contract, in violation of the Miller Act, 40 U.S.C. § 3131 *et seq.*, and Article 3A of the New York Lien Law.

1

Presently before the Court is a motion by the Defendants, pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(1) and (b)(6), to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted.

## I. Background

The following facts are drawn from the complaint and are construed in favor of the Plaintiff.

### A. The Relevant Underlying Facts

DME is a domestic corporation that is engaged in commercial roofing work, including roof repairs and replacements. See Compl. ¶¶ 5, 8. In this capacity, DME sometimes contracts with the Government to perform roofing work for various federal agencies. See id. ¶ 8.

Two Government public improvement contracts are referenced in the complaint. The first (the "Navy Project") is titled "Contract N40085-07-C-4467, Replace Roof on Buildings 203 and 204 at the Naval Support Activity in Mechanicsburg, Pennsylvania, Modification P00002," in which the Plaintiff acted as the prime contractor for a project performed for the United States Department of the Navy (the "Navy"). See id. ¶ 9. The second (the "USPS Project") is titled "Contract No. 089495-14-B-0109, Roof Replacement at the Main United States Post Office in Lake Grove, New York," in which the Plaintiff acted as the prime contractor for a project performed for the United States Postal Service (the "USPS"). See id. ¶ 11.

On November 4, 2008, apparently in connection with DME's work on the Navy Project, the Navy paid DME the sum of $249,743.78. See id. ¶ 10. However, subsequently, the Navy claimed that this amount had been paid in error, and that it paid approximately

$149,758 more than was due to the Plaintiff (the "Overpayment"). See id. The complaint does not allege whether the sum paid by the Navy was accurate or whether it was, in actuality, an overpayment.

On June 10, 2015, the USPS also made a payment to DME in an unspecified sum, apparently in connection with DME's work on the USPS Project (the "USPS Payment"). See id. ¶ 12. In an attempt to recoup the amount of the Overpayment, the Defendants allegedly offset the USPS Payment by $149,758, namely, the amount of the alleged Overpayment received by the Plaintiff in connection with the Navy Project. See id. ¶ 12. DME alleges that this reduction caused "irreparable harm" to the company because it owed those funds to its employees, material suppliers, and subcontractors for work actually performed on the USPS Project. See id. ¶ 25.

Based on these facts, the Plaintiff contends that the Defendants misapplied $149,758 in Government funds, in violation of the provisions of the Miller Act and relevant provisions of the New York Lien Law. See id. ¶¶ 15, 20-24. In particular, the Plaintiff alleges that the Defendants misapplied the funds allocated for the USPS Project in order to satisfy a debt that Plaintiff owed to the Government under a separate contract, namely, the Navy Project. Accordingly, DME seeks equitable relief under the federal Declaratory Judgment Act in the form of a temporary restraining order, a preliminary injunction, and a permanent injunction, all preventing the Government and Secretary Lew from applying the $149,758 sum that was withheld from the USPS Payment to satisfy the alleged Overpayment made to the Plaintiff's on the Navy Project.

The Court notes that, although the Plaintiff only alleges causes of action for equitable relief arising under the Declaratory Judgment Act, it apparently also seeks to

recover damages in the amount of the Overpayment. See, e.g., id. ¶¶ 29, 31 (alleging, in part, that "DME seeks . . . an order that said amount [the Overpayment] be paid to DME").

**B.     The Present Motion**

On December 11, 2015, the Defendants moved under Fed. R. Civ. P. 12(b)(1) and (b)(6) to dismiss the complaint. In particular, the Defendants contend that the Court lacks subject matter jurisdiction over the Plaintiff's claim because the Government has not waived its sovereign immunity and is therefore not subject to suit under the provisions of the Miller Act, the New York Lien Law, or the Declaratory Judgment Act.

Further, the Defendants contend that the Plaintiff has failed to state a cognizable claim for relief for three reasons: (1) the Miller Act does not create a private right of action against the Government; (2) under the federal Treasury Offset Program, specifically, the provisions of 31 U.S.C. § 3716(c)(1), the Defendants were within their rights to withhold the amount of the Overpayment; and (3) the Defendants also had a common law right to withhold the amount of the Overpayment. In sum, the Defendants argue that, even taking all of the Plaintiff's substantive allegations as true, they fail to set forth any compensable wrongful conduct.

The Court will address these contentions in greater detail below.

## II.     Discussion

**A.     The Standards of Review**

**1.     The Standard for Dismissal Based on Lack of Subject Matter Jurisdiction under Fed. R. Civ. P. 12(b)(1)**

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Marakova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting

subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Id. In this regard, "it is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." H20 v. Town Bd. of E. Hampton, Nos. 15-cv-2349 & 15-cv-5735, 2015 U.S. Dist. LEXIS 160337, at *57 (E.D.N.Y. Nov. 30, 2015) (Spatt, J.) (quoting FDIC v. Meyer, 510 U.S. 471, 475, 114 S. Ct. 996, 127 L. Ed. 2d 308 (1994)). "Accordingly, '[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.'" Barry v. United States SEC, No. 10-cv-4071, 2012 U.S. Dist. LEXIS 30547, at *8-*9 (E.D.N.Y. Mar. 7, 2012) (quoting Meyer, 510 U.S. at, 475).

### 2. The Standard for Dismissal Based on Failure to State a Claim under Fed. R. Civ. P. 12(b)(6)

Under Fed. R. Civ. P. 12(b)(6), a party may move to dismiss a cause of action that "fail[s] to state a claim upon which relief can be granted." "To survive a motion to dismiss, the complaint must plead 'enough facts to state a claim to relief that is plausible on its face,' Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)." Otis-Wisher v. Medtronic, Inc., 14-cv-3491, 2015 U.S. App. LEXIS 9565, at *2 (2d Cir. June 9, 2015).

### B. As to Whether the Court has Subject Matter Jurisdiction Over the Plaintiff's Claims

As noted above, the Defendants contend that the Court lacks subject matter jurisdiction over the Plaintiff's claims because none of the statutes invoked in the complaint operates as a waiver of the Government's sovereign immunity. The Court agrees.

Initially, the Court notes that the Declaratory Judgment Act "provides a specific remedy for plaintiffs who are alleging a claim based on a substantive source of rights, but does not itself confer any substantive rights." Khanom v. Kerry, 37 F. Supp. 3d 567, 575 (E.D.N.Y. 2014) (quoting Springfield Hosp. v. Hofmann, 488 F. App'x 534, 535 (2d Cir. 2012) (holding that the plaintiff "cannot maintain an action for a declaratory judgment without an underlying federal cause of action"); In re Joint E. & S. Dist. Asbestos Litig., 14 F.3d 726, 731 (2d Cir. 1992) (noting that the DJA does not "provide an independent cause of action," and that its "operation is procedural only – to provide a form of relief previously unavailable"); and Crewe v. Rich Dad Educ., LLC, 884 F. Supp. 2d 60, 80 (S.D.N.Y. 2012) (noting that "the Declaratory Judgment Act is not a source of federal substantive rights")).

Therefore, the Declaratory Judgment Act itself is a procedural vehicle, and cannot form an independent basis for subject matter jurisdiction. See Schutte Bagclosures Inc. v. Kwik Lok Corp., 48 F. Supp. 3d 675, 688-89 (S.D.N.Y. 2014) ("[F]or subject matter jurisdiction, there must be an independent basis for federal jurisdiction because it is well established that the DJA does not expand the jurisdiction of the federal courts, and a basis for subject matter jurisdiction other than the DJA must be found") (citing Albradco, Inc. v. Bevona, 982 F.2d 82, 85 (2d Cir. 1992)); see also Correspondent Servs. Corp. v. First Equities Corp., 442 F.3d 767, 769 (2d Cir. 2006) (noting that "the Declaratory Judgment Act does not by itself confer subject matter jurisdiction on the federal courts"), cert. denied sub nom., Waggoner v. Suisse Sec. Bank & Trust, Ltd., 549 U.S. 1209, 127 S. Ct. 1329, 167 L. Ed. 2d 81 (2007).

Accordingly, in order to sustain its threshold burden, the Plaintiff must demonstrate that the other statutes it relies upon as sources of substantive federal rights, namely, the

6

Miller Act and the New York Lien Law, provide a sufficient jurisdictional basis. In this regard, the Court reiterates that where, as here, "a private party [sues] a Federal agency or officer – absent a waiver of sovereign immunity – subject matter jurisdiction does not exist." SEC v. Comm. on Ways & Means of the U.S. House of Reps., No. 14 Misc. 192, 2015 U.S. Dist. LEXIS 154302, at *19 (S.D.N.Y. Nov. 13, 2015) (citing Spinale v. U.S. Dep't of Agriculture, 621 F. Supp. 2d 112, 117-18 (S.D.N.Y. 2009)). Thus, the question becomes whether the Miller Act or the New York Lien Law provides "a specific statutory waiver of sovereign immunity." Diversified Carting, Inc. v. City of New York, No. 04-cv-9507, 2006 U.S. Dist. LEXIS 1701, at *9 (S.D.N.Y. Jan. 20, 2006) (quoting Lawson v. FEMA, No. 03-cv-0881, 2003 U.S. Dist. LEXIS 7268, at *6 (S.D.N.Y. Apr. 30, 2003)). In light of the prevailing, albeit limited, caselaw on this question, the Court concludes that they do not.

First, with respect to the Miller Act, which requires that prime contractors on government construction projects post payment bonds for the protection of their subcontractors and materialmen, see Diversified Carting, Inc. v. City of New York, 423 F. Supp. 2d 85, 93 (S.D.N.Y. 2005), Courts have consistently held that the statute does not constitute a waiver of the Government's sovereign immunity. See Active Fire Sprinkler Corp. v. U.S. Postal Serv., 811 F.2d 747, 753 (2d Cir. 1987) (noting that "the Miller Act was not a waiver of immunity"); Northland Assocs. v. IRS, 160 B.R. 484, 493 (N.D.N.Y. 1993) (noting that Congress's intent in passing the Miller Act was to provide subcontractors "with an alternative remedy to normal state procedures without waiving the United States' sovereign immunity"); United States ex rel. Delta Structural Tech. v. Ranger Ins. Co., No. SA-02-CA-0442, 2003 U.S. Dist. LEXIS 18056, at *20 (W.D. Tex. Sept. 18, 2003) (Magistrate's Recommendation) ("Because 'there is clearly no waiver of sovereign immunity' under the

7

Miller Act, a plaintiff 'cannot maintain a Miller Act suit for damages against the United States'" (quoting Arvanis v. Noslo Eng'g Consultants, Inc., 739 F.2d 1287, 1290 (7th Cir. 1984), cert. denied, 469 U.S. 1191, 105 S. Ct. 964, 83 L. Ed. 2d 969 (1985), and Acousti Eng'g Co. v. United States, 15 Cl. Ct. 698, 701 (1988)), adopted, 2003 U.S. Dist. LEXIS 19508 (W.D. Tex. Oct. 28, 2003).

Most of the cases addressing the availability under the Miller Act of a direct remedy against the federal Government deal with the right of a subcontractor to sue the owner of a government project for sums owed. However, the Court finds no principled basis for concluding that the same rule should not apply to the right of a prime contractor to sue the Government, a conclusion supported by caselaw from other courts. See United States v. St. James Constr. Co., 724 F. Supp. 442, 443 (N.D. Tex. 1989) (noting that, although the Miller Act "allows a subcontractor who performed work on [federal] contract . . . to file suit against the prime contractor and the payment bond for unpaid sums," the statute "does not permit a prime contractor to cross-claim in district court against the United States"); Fett Roofing & Sheet Metal Co. v. Seaboard Surety Co., 294 F. Supp. 112, 118 (E.D. Va. 1968) ("The statute makes no provision for a cross-claim or counterclaim against the United States in Miller Act actions . . . nor do[es] [it] provide for third-party actions against the United States"); United States v. Biggs 46 F. Supp. 8, 12 (E.D. Ill. 1942) ("To permit a claim against the United States would be to render an affirmative judgment against the United States on a counterclaim which, in light of prevailing reasoning, is no part of the statutory proceedings").

As the Seventh Circuit Court of Appeals observed in Arvanis:

> The [Miller] Act grants a very narrow and specific right to those in appellants' position: the right to sue on the bond (if there happens to be one) "in the name of the United States for the use of the person suing." 40 U.S.C. § 270b(b). (The United States is thus aligned on the plaintiff's rather than the defendant's side by the equation, providing an additional reason for concluding that the United States cannot properly be a defendant in a Miller Act suit.). There is clearly no waiver of sovereign immunity here.

739 F.2d at 1290.

Thus, the Court finds that the Miller Act does not constitute a waiver of the Defendants' sovereign immunity, and therefore, does not provide a sufficient jurisdictional basis for the Plaintiff's claims.

Further, at least one court within this Circuit has found that Article 3A of the New York Lien Law has the "identical purpose" as the Miller Act. See Northland Assocs., 160 B.R. at 493. Therefore, "the Miller Act preempts the application of Article 3-A to the United States" and "Article 3-A [also] cannot serve as a waiver of sovereign immunity." Id. The Plaintiff failed to identify any authority to support a different result, arguing only that "[t]he federal courts recognize state statutes wherein a trust fund is created," such as Article 3A. See Pl. Memo of Law at 6 (unnumbered). Thus, the Court finds that the New York Lien Law also does not constitute a waiver of the Defendants' sovereign immunity, and therefore, does not provide a sufficient jurisdictional basis for the Plaintiff's claims.

In opposition to the present motion, the Plaintiff contends that, for purposes of this action, the Administrative Procedures Act ("APA"), 5 U.S.C. § 702, provides the requisite waiver of sovereign immunity to confer subject matter jurisdiction on the Court. See id. at 3-4 (unnumbered). In this regard, the Plaintiff argues that the APA "creates a 'general waiver of sovereign immunity as to equitable claims' unless there is another statute which

9

prohibits the equitable relief sought." Id. at 4 (unnumbered) (quoting Presidential Gardens Assocs. v. United States, 175 F.3d 132, 139 (2d Cir. 2009)).

However, as the Defendants point out, the Plaintiff failed to plead the APA as a basis for jurisdiction in the complaint, thereby violating Fed. R. Civ. P. 8's notice pleading requirement.

In any event, the plain language of the APA states that it applies only in actions against the United States which seek relief "other than money damages." 5 U.S.C. § 702; see Sterling v. United States, 749 F. Supp. 1202, 1207 (E.D.N.Y. 1990) (Report and Recommendation) ("The APA by its terms does not apply where the relief sought is money damages"), adopted, 749 F. Supp. 1202 (E.D.N.Y. 1990) (Spatt, J.). Thus, although the APA has long been interpreted in this Circuit as "broad" and "comprehensive" in its scope, see Derrick Storms v. United States, No. 13-cv-811, 2015 U.S. Dist. LEXIS 31998, at *41-*42 (E.D.N.Y. Mar. 16, 2015) (collecting controlling cases), the fact remains that it cannot be used by creative plaintiffs as a way of gaining back-door access to monetary damages that are otherwise unavailable due to sovereign immunity.

Indeed, as one district court has held:

[T]he Court finds that Plaintiff, in actuality, is seeking money damages, and it is well-settled that monetary damages are unavailable under the APA. See B.K. Instruments, Inc. v. United States, 715 F.2d 713, 727 (2d Cir. 1983) ("The courts have established firmly that where the prime objective of the plaintiff is to obtain money damages from the Government, [the lack of federal district court jurisdiction, pursuant to the APA, may] not be avoided by framing a complaint to appear to seek only injunctive, mandatory or declaratory relief against government officials when the result would be the equivalent of obtaining money damage."); see also Dep't of Army v. Blue Fox, Inc., 525 U.S. 255, 263, 119 S. Ct. 687, 142 L. Ed. 2d 718 (1999) (noting that claimant's description of relief as "equitable" was not dispositive in determining whether relief sought was equitable or monetary); Adeleke [v. United States], 355 F.3d [144,] 152 n.7 [2d Cir. 2004] (citing Blue Fox and noting that sovereign immunity bars APA claims for money damages, "even when

> pursued as an equitable remedy"); Jaffee v. United States, 592 F.2d 712, 715 (3d Cir. 1979) ("A plaintiff cannot transform a claim for damages into an equitable action by asking for an injunction that orders the payment of money.") . . . Accordingly, the Court lacks subject matter jurisdiction over this action, and the Amended Complaint must be dismissed.

Laporte v. United States, No. 09-cv-7247, 2011 U.S. Dist. LEXIS 92935, at *33-*35 (S.D.N.Y. Aug. 19, 2011).

The same result is warranted in this case. In the Court's view, the Plaintiff has attempted to engineer jurisdiction by weaving together a series of statutes, namely, the APA, the Declaratory Judgment Act, and the Miller Act, in an attempt to defeat the Defendants' sovereign immunity. In this regard, the Plaintiff ostensibly seeks equitable relief in the form of a permanent injunction barring the Defendants from offsetting the USPS Payment by the amount of the Navy Overpayment. However, it is clear that the true aim of this action is to recover monetary amounts allegedly due to the Plaintiff under the USPS Project, a suspicion that is readily confirmed in the complaint's *ad damnum* clause. See Compl. ¶¶ 29, 31 ("DME seeks . . . an order that said amount [the Overpayment] be paid to DME").

Accordingly, the Court finds that, under the facts and circumstances of this case, the APA does not constitute a waiver of the Defendants' sovereign immunity, and therefore, does not provide a sufficient jurisdictional basis for the Plaintiff's monetary claim. Therefore, the Defendants' motion to dismiss the complaint under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction is granted. The Court need not reach the Defendants' remaining contentions.

The Clerk of the Court is respectfully directed to close this case.

It is **SO ORDERED.**

Dated: Central Islip, New York
May 21, 2016

/s/ Arthur D. Spatt
ARTHUR D. SPATT
United States District Judge